Donald W. McCormick – Bar No. 109584
ANDERSON MCPHARLIN & CONNERS, LLP
707 Wilshire Blvd., Suite 4000
Los Angeles, California 90017
Tel: (213) 688-0080
Fax: (213) 622-7594
dwm@amclaw.com

Andrew T. Houghton (*pro hac vice application pending*)
Anna Mandel (*pro hac vice application pending*)
SKARZYNSKI MARICK & BLACK LLP
One Battery Park Plaza, 32nd Floor
New York, NY 10004
Tel: (212) 820-7700
Fax: (212) 820-7740
ahoughton@skarzynski.com
amandel@skarzynski.com

*Attorneys for Plaintiff ALLIANZ GLOBAL RISKS US INSURANCE COMPANY*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | Case No. |
| Plaintiff, | |
| v. | |
| GSSL, INC. D/B/A/ NEAR SPACE CORPORATION, | **COMPLAINT FOR DECLARATORY RELIEF** |
| Defendant. | |

Plaintiff, Allianz Global Risks US Insurance Company ("AGR US"), by and through its attorneys, brings this Complaint for Declaratory Relief against Defendant, GSSL, Inc. d/b/a/ Near Space Corporation ("NSC"), and states as follows:

Complaint for Declaratory Relief

**NATURE OF THE ACTION**

1.     This is an insurance coverage action. AGR US's Complaint against NSC seeks declaratory relief pursuant to 28 U.S.C. § 2201 for a ruling that no coverage is available and that AGR US has no duty to defend or duty to indemnify NSC under either of two insurance policies issued by AGR US to NSC, an Aviation Commercial General Liability Insurance Policy No. A2GA000581517AM ("the Aviation CGL Policy") and an Aviation Products/Completed Operations and Grounding Liability Insurance Policy No. A2PR000582017AM ("the Products/Completed Operations Policy") (the Aviation CGL Policy and the Products/Completed Operations Policy are together referred to as "the Policies"), in connection with a Third-Party Complaint filed by The Boeing Company ("Boeing") against NSC seeking defense and indemnification for claims asserted against Boeing in the action titled *Timothy Lachenmeier, an individual and Kristen Lachenmeier, an individual v. The Boeing Company, a Delaware Corporation, Boeing Defense, Space & Security and Does 1-10* pending in the United States District Court for the Central District of California under Case No. 2:20-cv-02206-JVS (JDEx) (the "Underlying Action") because coverage is limited, barred or extinguished by the terms, conditions and exclusions of the Policies.

2.     There is a real, substantial, and justiciable issue in controversy between AGR US and NSC with respect to the parties' rights and obligations under the Policies. A declaratory judgment is appropriate at this time because AGR US has no adequate remedy at law that will resolve the current controversy.

3.     The Underlying Action and Third-Party Complaint arise from alleged injuries sustained by Timothy Lachenmeier, NSC's President and Launch Director at the time he allegedly sustained his injuries, and the related loss of consortium by Kristen Lachenmeier, NSC's Chief Financial Officer and the spouse of Timothy Lachenmeier, as a result of an accident on March 27, 2017 during NSC's conduct

/ / /

of a Parachute System Qualification Test balloon drop ("PSQT balloon drop") for Boeing.

**THE PARTIES**

4.     AGR US is an insurance company that is incorporated under the laws of the State of Illinois with a principal place of business in Chicago, Illinois.

5.     On information and belief, NSC is a corporation organized under the laws of Oregon with a principle place of business in Oregon. On information and belief, NSC is a commercial provider of high altitude and near space platforms and flight services using its balloon platforms and systems.

**JURISDICTION AND VENUE**

6.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of costs.

8.     This Court has personal jurisdiction over NSC because, upon information and belief and as alleged by NSC officers Timothy Lachenmeier and Kristen Lachenmeier in the Underlying Action, Boeing and Boeing's Defense, Space & Security's Commercial Crew Transportation System unit in Huntington Beach, California issued a purchase contract for NSC's services for the PSQT balloon drop. In connection with the purchase contract, NSC's invoices were to be submitted to Boeing and Boeing Defense, Space & Security's Commercial Crew Transportation System unit in Huntington Beach, California.

9.     On information and belief, NSC submitted invoices for NSC's services to the Commercial Crew Transportation System unit in California over a period of approximately two (2) years prior to Mr. Lachenmeier's accident on March 27, 2017.

10.     On information and belief, NSC performed initial flight rigging services for Boeing in Huntington Beach, California pursuant to a Supplier

Complaint for Declaratory Relief

Statement of Work for Parachute Development and Qualification Test Services entered into between NSC and Boeing.

11.     In the Third-Party Complaint, Boeing alleges that in connection with the services provided by NSC to Boeing for the PSQT balloon drop, NSC entered into the Boeing Company General Provisions GP2 (Fixed Price Services Contract – Commercial) Services Agreement (the "GP2 Services Agreement") with Boeing in California.

12.     The Underlying Action and the Third-Party Complaint were filed in the United States District Court for the Central District of California.

13.     Venue in the Central District of California is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Central District of California. Furthermore, the Underlying Action and the Third-Party Complaint are before this Court.

## BACKGROUND

14.     On June 8, 2020, over three (3) years after Timothy Lachenmeier's March 27, 2017 accident during the conduct of the PSQT balloon drop, NSC, through its brokers, notified AGR US of the accident and forwarded to AGR US a copy of a letter received by NSC from Boeing's counsel demanding defense and indemnification of Boeing in connection with Mr. and Mrs. Lachenmeier's claims against Boeing arising from the accident (the "First Tender"). In NSC's June 8, 2020 letter to AGR US, NSC sought coverage from AGR US under the Aviation CGL Policy.

15.     On June 15, 2020, AGR US sent NSC a position letter informing NSC that no coverage exists, either defense or indemnity, under the Aviation CGL Policy for Mr. and Mrs. Lachenmeier's claims or for the First Tender.

16.     On August 11, 2020, NSC re-tendered the First Tender to AGR US and sought coverage of the same under the Products/Completed Operations Policy.

/ / /

Complaint for Declaratory Relief

17.    On August 25, 2020, AGR US acknowledged receipt of NSC's August 11, 2020 correspondence and requested additional information and documents regarding the claims. Specifically, in its August 25, 2020 letter, Allianz requested the following additional information from NSC:

(1)    As NSC had not provided any additional materials with its August 11, 2020 letter, AGR US requested if there were any additional materials that NSC believed AGR US should consider, that NSC forward them to AGR US;

(2)    AGR US requested, if Boeing has made any further demand or claim against NSC or filed a lawsuit against NSC since its June 8, 2020 demand letter, that NSC provide all documentation of any such demand, claim, or lawsuit;

(3)    Because it was AGR US' understanding that the Lachenmeiers' claim against Boeing was previously scheduled for mediation on June 23, 2020, AGR US asked that NSC advise of the status of the Lachenmeiers' claim against Boeing; and

(4)    AGR US requested that NSC immediately provide a complete copy of the March 1, 2019 settlement demand letter from the Lachenmeiers' counsel and all exhibits thereto as it appeared that the copy of the March 1, 2019 letter provided to AGR US with NSC's June 8, 2020 submission was missing a complete copy of Exhibit A, the "Standard Operating Procedure for Parachute System Qualification (PSQT) Balloon Drop."

17.    In a letter dated August 25, 2020 (but emailed on August 27, 2020) NSC disputed AGR US' conclusion, set forth in its June 15, 2020 position letter, that no coverage exists under the Aviation CGL Policy for Mr. and Mrs. Lachenmeier's claims or for the First Tender.

18.    On September 8, 2020, AGR US sent NSC a second position letter setting forth its position that no coverage exists, either defense or indemnity, under

the Products/Completed Operations Policy or, having considered NSC's arguments, under the Aviation CGL Policy for the First Tender or for Mr. and Mrs. Lachenmeier's claims. In the September 8, 2020 correspondence, AGR US again requested the additional information and documents it requested on August 25, 2020 from NSC, but which had not been provided.

19.    NSC did not provide any of the requested information at that time other than to advise AGR US on September 9, 2020 that a mediation was scheduled to take place on September 15, 2020. NSC stated that a complete copy of the March 1, 2019 settlement demand would be provided.

20.    After AGR US again requested the missing complete copy of Exhibit A, the "Standard Operating Procedure for Parachute System Qualification (PSQT) Balloon Drop", on October 17, 2020 NSC advised it would provide the requested information as soon as it confirmed there was no objection from Boeing.

21.    On October 19, 2020, because NSC's correspondence did not address what coverage part it believed applied to the balloon system being used by NSC during the subject incident, AGR US requested a copy of the airworthiness certificate for the balloon system used in the incident.

22.    On December 28, 2020, NSC sent AGR US a copy of another tender NSC received from Boeing, which tender was dated December 14, 2020 (the "Second Tender"). The Second Tender attached a copy of the complaint, dated November 20, 2020, filed by Mr. and Mrs. Lachenmeier in the Underlying Action (the "Underlying Complaint").

23.    Prior to December 28, 2020, neither the Underlying Complaint dated November 2020, nor the Second Tender dated December 14, 2020, had been provided to AGR US.

24.    On January 5, 2021, AGR US acknowledged receipt of NSC's December 28, 2020 letter and once again requested the information and documents outstanding since August 25, 2020.

1    25.    NSC still did not respond to the requests at that time.

2    26.    On March 18, 2021, NSC sent AGR US a copy of the Third-Party

3  Complaint against NSC filed by Boeing in the Underlying Action and asked that

4  AGR US provide a defense under the Policies.

5    27.    On March 25, 2021, AGR US acknowledged receipt of NSC's March

6  18, 2021 letter and again requested the information and documents outstanding

7  since August 25, 2020.

8    28.    On April 9, 2021, NSC provided a copy of Exhibit A, the "Standard

9  Operating Procedure for Parachute System Qualification (PSQT) Balloon Drop".

10  NSC's counsel also stated that an airworthiness certificate for the balloon system

11  was not required.

12    29.    On April 15, 2021, AGR US sent NSC a third position letter advising

13  NSC that AGR US will defend NSC in connection with the Third-Party Complaint

14  by Boeing subject to a reservation of rights that no coverage, either defense or

15  indemnity, was available under either of the Policies and reserving AGR US' right

16  to initiate a declaratory judgment action seeking a declaration that no coverage,

17  defense or indemnity, was owed to NSC. AGR US is currently providing a defense

18  to NSC, under reservation of rights, in connection with the Third-Party Complaint.

19  **THE UNDERLYING ACTION AND THE THIRD-PARTY COMPLAINT**

20    30.    On February 26, 2021, in the Underlying Action, Boeing filed a third-

21  party complaint against NSC seeking defense and indemnification from NSC (the

22  "Third-Party Complaint"). A true and correct copy of the Third-Party Complaint

23  and exhibits thereto is attached hereto as Exhibit **"A"**.

24    31.    The complaint filed by Mr. and Mrs. Lachenmeier against Boeing in

25  the Underlying Action is attached to and incorporated into the Third-Party

26  Complaint.

27  / / /

28  / / /

2358950.1                               -7-

Complaint for Declaratory Relief

## A. THE UNDERLYING COMPLAINT

32.     In the Underlying Complaint, Mr. and Mrs. Lachenmeier allege that Mr. Lachenmeier was NSC's President and Launch Director and that Mrs. Lachenmeier was NSC's Chief Financial Officer at the time of Mr. Lachenmeier's March 27, 2017 accident during conduct of the PSQT balloon drop.

33.     The Underlying Complaint alleges that the PSQT balloon drop was one among a series of tests NSC was performing for Boeing pursuant to the purchase contract in connection with Boeing's testing of its parachute system.

34.     The Underlying Complaint alleges that Mr. Lachenmeier's duties as NSC's Launch Director at the time included making final connections to equipment prior to the PSQT balloon drop launch.

35.     During the PSQT balloon drop test, Boeing's parachute recovery system was to be tested by carrying Boeing's test capsule to a 40,000-foot height with NSC's helium balloon and releasing it to test the parachute system.

36.     The Underlying Complaint alleges that, to prepare for the test, Mr. Lachenmeier plugged in the Boeing capsule release cable. At that time, an electrostatic discharge allegedly caused one of the pyro activated cutters to misfire, severing the primary restraint lines holding the helium balloon to the ground. The electrostatic discharge caused the capsule, tethered to the balloon, to move upwards and this caused Mr. Lachenmeier to fall off of the ladder he was standing on approximately 20 feet to the ground and injure his right foot, right ankle, neck, back and hips. Mr. Lachenmeier eventually underwent below-the-knee amputation of his right leg as a result of this injuries.

37.     The Underlying Complaint alleges, among other things, that Boeing maintained control of the work area during the PSQT balloon drop and Boeing had a duty under the purchase contract to provide and maintain Mr. Lachenmeier's and NSC's work area and equipment in a safe condition and free of defects, for NSC's use during the PSQT balloon drop.

38.     In the Underlying Complaint, Mr. and Mrs. Lachenmeier assert three (3) causes of action against Boeing for negligence, intentional infliction of emotional distress, and loss of consortium.

**B. THE THIRD-PARTY COMPLAINT**

39.     In the Third-Party Complaint, Boeing alleges that Mr. and Mrs. Lachenmeier were executive officers of NSC at the time of Mr. Lachenmeier's accident. Mr. Lachenmeier was NSC's President and Chief Technical Officer and the Launch Director for the PSQT balloon drop. Mrs. Lachenmeier was NSC's Chief Financial Officer. Boeing alleges that Mr. Lachenmeier had a supervisory role with regard to the PSQT balloon drop and was closely involved in the execution of the PSQT balloon drop.

40.     Boeing also alleges that at the time of Mr. Lachenmeier's accident, the work area where the accident happened was "under Boeing's control for purposes of completing the PSQT" balloon drop and NSC's personnel, including Mr. Lachenmeier, were performing work there in connection with completing the PSQT balloon drop.

41.     Boeing alleges that Mr. Lachenmeier was injured while conducting the PSQT balloon drop.

42.     Boeing asserts that it was not responsible in any way for the accident and that the accident was caused by NSC's and Mr. Lachenmeier's concurrent negligent and tortious conduct.

43.     Boeing alleges that following Mr. Lachenmeier's accident, a root cause analysis conducted by Boeing and NSC determined that an NSC hardware failure caused an ungrounded spark to prematurely activate a pyrotechnic cutter that severed one of the restraints that had been securing Boeing's BP-4 capsule and caused the ladder Mr. Lachenmeier was standing on to fall.

/ / /

/ / /

Complaint for Declaratory Relief

44.     Boeing asserts that the "precipitating cause" of the accident was the mechanical failure of an NSC aircraft product and that NSC is liable to Boeing for losses arising from NSC's aircraft product.

45.     Boeing also asserts that pursuant to paragraph 40 of the GP2 Services Agreement, NSC must indemnify Boeing for NSC's and/or Mr. Lachenmeier's alleged negligence. Paragraph 40 of the GP2 Services Agreement provides, in pertinent part:

**INDEMNIFICATION, INSURANCE AND PROTECTION OF PROPERTY**.

The following provisions shall only apply if and to the extent Seller's [NSC's] personnel enter or perform work at premises owned or controlled by Buyer [Boeing] or Buyer's customer:

a. <u>Indemnification</u>. Seller shall defend, indemnify and hold harmless The Boeing Company, its subsidiaries, and their directors, officers, employees and agents from and against all actions, causes of action, liabilities, claims, suits, judgments, liens, awards and damages of any kind and nature whatsoever for property damage, personal injury or death (including without limitation injury to or death of employees of Seller or any subcontractor thereof) and expenses, costs of litigation and counsel fees related thereto or incident to establishing the right to indemnification, arising out of or in any way related to this Contract, the performance thereof by Seller or any subcontractor thereof or other third parties within the control or acting at the direction of Seller, or any of their respective employees (collectively for the purposes of this paragraph, the "Seller Parties"), including, without limitation, the provision of goods, services, personnel, facilities, equipment, support, supervision or review. The foregoing indemnity shall apply only to the extent of the negligence or willful misconduct of the Seller Parties that occurs while on premises owned or controlled by Buyer. In no event shall Seller's obligations hereunder be limited to the extent of any insurance available to or provided by Seller or any subcontractor thereof. Seller expressly waives any immunity under industrial insurance, whether arising out of statute or other source, to the extent of the indemnity set forth in this paragraph.

46.    Boeing alleges that NSC's negligence also resulted in breaches of the GP2 Services Agreement. The alleged breaches include:

> (1) NSC's failure to establish and maintain an acceptable quality control system and allow Boeing to adequately review NSC's procedures, practices, processes and related documents to determine such acceptability (Section 13); (2) NSC's failure to notify Boeing in writing "when discrepancies in [NSC's] process, including any violation of or deviation from NSC's approved inspection/quality control system, or goods/materials are discovered or suspected which may affect the Services delivered or to be delivered under this [GP2 Services Agreement]" (Section 14); (3) failure to perform the services in a manner that was warranted to be "free from defects in workmanship and conform to the requirements of [the GP2 Services Agreement]" (Section 17); and (4) NSC's failure to ensure that it and any subcontractor, use suitable precautions to prevent damage to Boeing's property, and promptly and equitably reimburse Boeing for such damage or repair that is caused by NSC's or its subcontractor's negligence (Section 40(g)).

47.    Boeing claims that in the absence of the GP2 Services Agreement, NSC is liable to Boeing for such alleged breaches and must indemnify Boeing for same.

48.    Boeing asserts four (4) causes of action against NSC in the Third-Party Complaint: total equitable indemnity, comparative indemnity, equitable apportionment of fault, and contractual indemnity.

49.    In its first cause of action for "total equitable indemnity", Boeing alleges that if Boeing is held liable to Mr. and Mrs. Lachenmeier in the Underlying Action, such liability would be due to the tortious conduct of NSC and of Mr. Lachenmeier, for whom NSC is liable, and that NSC would be required to completely indemnify Boeing.

50.    Boeing alleges that it is entitled, at a minimum, to an adjudication of its share of legal responsibility in connection with the Underlying Action as well as each party's respective share of legal responsibility. It claims it should be indemnified, at a minimum, on the basis of comparative/partial indemnity as between and/or among Boeing, NSC, and Timothy Lachenmeier.

/ / /

-11-

Complaint for Declaratory Relief

51.     For its second cause of action for comparative indemnity, it alleges that if Boeing is held liable in the Underlying Action, NSC must indemnify Boeing for that portion of any judgment attributable to the percentage of fault assessed or assessable against NSC and/or Mr. Lachenmeier.

52.     On its third cause of action for equitable apportionment of fault, Boeing seeks a declaration regarding the proportion of negligence, fault, and/or other liability of NSC and Mr. Lachenmeier in the Underlying Action.

53.     For its contractual indemnity cause of action, Boeing contends that NSC's refusal to accept Boeing's tender and defend and indemnify Boeing in the Underlying Action is a breach of a material term of the GP2 Services Agreement for which Boeing is entitled to injunctive relief.

54.     Boeing requests an adjudication that "any responsibility and/or liability determined to exist for the damages alleged in the Underlying Complaint is the result of the primary and/or active negligence and/or otherwise tortious misconduct of NSC, and only the secondary and/or passive negligence and/or derivative negligence of Boeing" and that NSC must defend and indemnify Boeing in the Underlying Action and reimburse Boeing for attorneys' fees, expenses, and court costs.

55.     Boeing also demands that the Court "adjudge and decree that the negligent and/or other wrongful conduct of Boeing and NSC, or any of them, shall be apportioned" and that Boeing be awarded partial and comparative indemnification against NSC.

## THE AVIATION COMMERCIAL GENERAL LIABILITY POLICY

56.     AGR US issued the Aviation CGL Policy to NSC for the policy period March 1, 2017 to March 1, 2018. A true copy of the Aviation CGL Policy is attached hereto as **Exhibit "B"**.

/ / /

/ / /

57.     The coverage provided by the Aviation CGL Policy is subject to all of the Aviation CGL Policy's terms, provisions, conditions, exclusions, and endorsements, which include, but are not limited to, the following definitions:

## AVIATION COMMERCIAL GENERAL LIABILITY
## INSURANCE POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance which is shown in the Declarations (and hereinafter referred to as the Company).

The word "Insured" means any person or organization qualifying as such under **SECTION – V - WHO IS AN INSURED**.

Other words and phrases that appear in **bold** type have special meaning. Refer to **SECTION I** – **DEFINITIONS**.

In consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the Named Insured with respect to the coverages indicated in the Declarations as follows:

/ / /

**SECTION I – DEFINITIONS**

\*       \*       \*

2. **Aircraft** means any **aircraft** including engines, propellers, operating and navigating instruments and radio equipment attached to or usually attached to or carried on the **aircraft**, including component parts detached and not replaced by other similar parts, and tools therein which are standard for the make and type of **aircraft**. The term **aircraft** excludes missiles, **spacecraft** and launch vehicles.

\*       \*       \*

4. **Aviation operations** means all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities.

5. **Bodily Injury** means physical injury sustained by any person, caused by an **occurrence** during the policy period, including sickness, disease, mental anguish, and death at any time resulting therefrom. Mental anguish does not include **Personal Injury**.

\*       \*       \*

7. **Employee** includes a **leased worker. Employee** does not include a temporary worker.

8. **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

\*       \*       \*

**11. Insured contract** means any of the following:

\*     \*     \*

**f.** that part of any other contract or agreement pertaining to your **aviation operations** (including indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **11.** does not include that part of any contract or agreement:

\*     \*     \*

(4) that indemnifies any person or organization for **Bodily Injury** or **Property Damage** arising out of the manufacture of **aircraft** or **aircraft** parts by the indemnitee,

\*     \*     \*

**19. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, that results in **Bodily Injury** or **Property Damage** during the policy period neither expected nor intended from the standpoint of the Insured. In the event of continuing or progressive **Bodily Injury** or **Property Damage** happening over an extended length of time, such **Bodily Injury** and **Property Damage** shall be deemed to be one **occurrence**, and shall be deemed to occur only when such **Bodily Injury** and **Property Damage** first commences.

* * *

58.     Under Section II – Coverages, the Aviation CGL Policy contains insuring agreements and exclusions, including but not limited to, the following:

## SECTION II – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** to which this insurance applies resulting from your **aviation operations**. We will have the right and duty to defend the Insured against any **suit** seeking those damages. However, we will have no duty to defend the Insured against any **suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result. However:

    (1) the amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE,** and

    (2) our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGE A, B AND D**.

/ / /

**b.** This insurance applies to **Bodily Injury** and **Property Damage** only if:

(1) the **Bodily Injury** or **Property Damage** is caused by an **occurrence** that takes place in the **coverage territory**,

(2) the **Bodily Injury** or **Property Damage** occurs during the policy period and

\*      \*      \*

**e.** Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from **Bodily Injury**.

\*      \*      \*

**2. Exclusions**

The insurance provided by Coverage A does not apply to:

\*      \*      \*

**b. Bodily Injury** or **Property Damage** for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages:

(1) that the Insured would have in the absence of the contract or agreement or

(2) assumed in a contract or agreement that is an **insured contract**, provided the **Bodily Injury** and **Property Damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than the

Insured are deemed to be damages because of **Bodily Injury** or **Property Damage**, provided that:

(a) liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract** and

(b) such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*        \*        \*

e. **Bodily Injury** to:

(1) an **employee** of the Insured arising out of and in the course of:

(a) employment by the Insured or

(b) performing duties related to the conduct of the Insured's business.

(2) the spouse, child, parent, brother or sister of the **employee** as a consequence of para-graph **e**.(1) above.

This exclusion applies:

(3) whether the Insured may be liable as an employer or in any other capacity and

(4) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an **insured contract.**

\*        \*        \*

**g. Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any **aircraft**, **auto** or watercraft owned or operated by or leased, rented, or loaned to any Insured. Use includes operation and **loading or unloading** and with respect to **aircraft**, operated by also includes operation on behalf of any Insured.

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the **occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any **aircraft**, **auto** or watercraft that is owned or operated by or leased, rented or loaned to any Insured.

\*   \*   \*

### SECTION V – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

\*   \*   \*

**d**. an organization other than a partnership, joint venture or limited liability company, you are an Insured.  Your **executive officers** and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

\*   \*   \*

59.   The Aviation CGL Policy contains Condition No. 4, the Duties In the Event of Occurrence, Loss, Claim Or Suit, which imposes certain duties and

/ / /

Complaint for Declaratory Relief

obligations upon an insured as a pre-condition to coverage, including but not limited to the following:

## SECTION VI – POLICY CONDITIONS

\*     \*     \*

**4. Duties In The Event Of Occurrence, Loss, Claim Or Suit**

   **a.** You **must** see to it that we are notified promptly of an **occurrence** or an offense which may result in a claim. To the extent possible, notice should include all of the following:

    (1) How, when and where the **occurrence** took place;

    (2) The names and addresses of any injured persons and witnesses;

    (3) The nature and location of any injury or damage arising out of the **occurrence** or offense.

   **b.** If a claim is made or **suit** is brought against any Insured, you must:

    (1) immediately record the specifics of the claim or **suit** and the date received and

    (2) notify the Company as soon as practicable.

   **c.** You and any other involved Insured must:

    (1) immediately send the Company copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit,**

    (2) authorize the Company to obtain records and other information,

    (3) cooperate with the Company in the investigation, settlement or defense of the claim or **suit** and

/ / /

(4) assist the Company, upon its request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**d.** No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without the Company's consent.

\*       \*       \*

60.     The Aviation CGL Policy contains Amendatory Endorsement No. 10, which notwithstanding Coverage A, Exclusion 2.g, extends the coverage available under the Aviation CGL Policy to include the following:

### AMENDATORY ENDORSEMENT
### (Endorsement No. 10)

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

Notwithstanding Coverage A., Exclusion 2. g. this policy is extended to include the following:

**AIRCRAFT LIABILITY**

1. <u>INSURING AGREEMENT</u>

(a) We will pay those sums that the Insured becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** to which this insurance applies resulting from your ownership, maintenance or use of Experimental Aerostats and High Altitude Shuttle Systems (HASS). We will have the right and duty to defend any **suit** seeking those damages. We may at our discretion investigate any occurrence and settle any claim or **suit** that may result.

But:

(1) The amount we will pay for damages is limited as described in ITEM 3 of this endorsement – LIMITS OF INSURANCE; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance.

No other obligation or liability to pay sums or perform acts or services is covered.

(b) This insurance applies to **Bodily Injury** and **Property Damage** only if:

(1) The **Bodily Injury** or **Property Damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

(2) The **Bodily Injury** or **Property Damage** occurs during the policy period; and

(3) The Experimental Aerostats and High Altitude Shuttle Systems are used by you or on your behalf in connection with your **Aviation Operations** insured under this policy.

(c) Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

2. <u>EXCLUSIONS</u>

This insurance does not apply to:

\*      \*      \*

(b) **Bodily Injury** or **Property Damage** for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract of agreement.

*      *      *

(e) **Bodily Injury** to:

    (1) An **employee** of the Insured arising out of and in the course of employment by the Insured; or

    (2) The spouse, child, parent, brother or sister of that **employee** as a consequence of (e) (1) above.

This exclusion applies:

    (i) Whether the Insured may be liable as an employer or in any other capacity; and

    (ii) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*      *      *

## THE PRODUCTS / COMPLETED OPERATIONS POLICY

61.    AGR US issued the Products/Completed Operations Policy to NSC for the policy period March 1, 2017 to March 1, 2018. A true and correct copy of the Policy is attached hereto as Exhibit **"C"**.

62.    The coverage provided by the Products/Completed Operations Policy is subject to all of the Products/Completed Operations Policy's terms, provisions, conditions, exclusions, and endorsements, which include but are not limited to the following definitions:

### AIRCRAFT PRODUCTS / COMPLETED OPERATIONS AND GROUNDING LIABILITY INSURANCE POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Complaint for Declaratory Relief

Words and phrases that appear in **bold** type have special meaning. Refer to the section titled – **DEFINITIONS**.

In consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the **Named Insured** as follows:

## DEFINITIONS

### 1. AIRCRAFT

"**Aircraft**" means a vehicle designed to be used primarily in the air and to be supported by the dynamic reaction of the air upon the vehicle's wings or rotor-blades, and/or by the vehicle's buoyancy in the air. The term **aircraft** excludes **missiles**, **spacecraft** and **launch vehicles**.

### 2. AIRCRAFT PRODUCTS

"**Aircraft Products**" means **aircraft**, **missiles**, **spacecraft** or **launch vehicles** and any ground support or control equipment used therewith or any article furnished by the **Insured** or its predecessors and installed therein or used in connection therewith, or for spare parts thereof, or tooling used for the manufacture thereof, including ground handling tools and equipment and also means training aids, instructions, manuals, blueprints, engineering or other data, and/or any article in respect of which engineering or other advice and/or services and/or labor have been given or supplied by the **Insured** relating to **aircraft**, **missiles**, **spacecraft, launch vehicles** or any article thereof.

/ / /

/ / /

3. **BODILY INJURY**

"**Bodily Injury**" means physical injury sustained by any person, caused by an **occurrence** during the policy period, including sickness, disease, mental anguish, and death at any time resulting therefrom. Mental anguish does not include personal injury.

\*       \*       \*

5. **COMPLETED OPERATIONS**

"**Completed Operations**" means work, including services and labor performed by the **Insured** in connection with **aircraft**, **missiles** or **spacecraft**. Operations include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

A) when all operations to be performed by or on behalf of the **Insured** under the contract have been completed; or

B) when all operations to be performed by or on behalf of the **Insured** at the site of the operations have been completed; or

C) when the portion of the work out of which the **Bodily Injury** or **Property Damage** arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged for a principal as a part of the same project.

Operations which may require further service, maintenance, work, correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

/ / /

**6. COMPLETED OPERATIONS HAZARD**

"**Completed Operations Hazard**" means **bodily injury** and **property damage** arising out of **completed operations** or reliance upon a representation or warranty at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs after such operations have been completed or abandoned and occurs away from premises **owned by** or rented to the **Insured**. The **completed operations hazard** does not include **bodily injury** or **property damage** arising out of the existence of tools, uninstalled equipment or abandoned or unused materials.

\*      \*      \*

**9. INSURED**

The unqualified word **Insured** includes the **Named Insured** and also includes any partner, executive officer, director, employee, stockholder or agent thereof, while acting within the scope of his duties as such. Such insurance as is afforded any employee shall not apply to **bodily injury** sustained by another employee of the same **Insured** in the course of or arising out of his employment by such **Insured**.

\*      \*      \*

**15. OCCURRENCE**

"**Occurrence**" means an accident, including continuous or repeated injurious exposure to conditions, other than **Grounding**, during the policy period, which results in **bodily injury** or **property damage** during the policy period neither expected nor intend-ed from the standpoint of the **Insured**. In the event of continuing or progressive **bodily injury** or **property damage** otherwise covered by the policy

happening over an extended period of time, such **bodily injury** or **property damage** shall be deemed to be one **occurrence**, and shall be deemed to occur only when such **bodily injury** or **property damage** first commences.

\* \* \*

**17. PRODUCTS HAZARD**

"**Products Hazard**" means the handling or use of (other than by an **Insured**) or the existence of any condition in an **aircraft product** when such **aircraft product**:

A) is not in the possession of the **Insured** and

B) is away from premises owned, rented or controlled by the **Insured**.

With respect to Coverage A - **Bodily Injury** or **Property Damage** Liability - paragraph B) above does not apply to a completed **aircraft** or any **aircraft product** forming a part thereof. With respect to Coverage B - **Grounding** Liability - Conditions A) and B) of this paragraph do not apply to a completed **aircraft** or any **aircraft product** forming a part thereof.

\* \* \*

63.     The coverage provided by the Products/Completed Operations Policy is subject to all of the Products/Completed Operations Policy's terms, provisions, conditions, exclusions, and endorsements, which include but are not limited to the following insuring agreement for Coverage A – Bodily Injury or Property Damage Liability:

/ / /

/ / /

/ / /

Complaint for Declaratory Relief

**INSURING AGREEMENTS**

1. **COVERAGE A - BODILY INJURY OR PROPERTY DAMAGE LIABILITY**

   To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **occurrence** arising out of the **products hazard** or the **completed operations hazard**.

   \*       \*       \*

3. **DEFENSE AND SETTLEMENTS - COSTS AND SUPPLEMENTARY PAYMENTS**

   The Company shall have the right and duty to defend any suit against the **Insured** seeking damages on account of such **bodily injury**, **property damage** or loss of use, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigations and settlement of any claim or suit as it deems expedient.

   \*       \*       \*

**EXCLUSIONS**

THIS POLICY DOES NOT APPLY:

1. **UNDER COVERAGES A AND B:**

   A) to liability assumed by the **Insured** under any contract or agreement except:

   1) a warranty of fitness or quality of the **Named Insured's aircraft products** or a warranty that work performed by or on behalf of the **Named Insured** will be done in a workmanlike manner or

2) liability assumed by the **Named Insured** under a written contract executed during the Policy Period provided such contract is:

    a) reported to the Company within thirty (30) days after its execution and the **Insured** shall pay premium as determined by the Company and

    b) not rejected by the Company by mailing to the **Named Insured** at the address shown in the Declarations a written no-tice stating when, not less than ten (10) days thereafter, such written contract is excluded from this policy.

\*    \*    \*

C) to any obligation for which the **Insured** or any carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law or under any similar law, or **bodily injury** to an employee of the **Insured** arising out of and in the course of employment by the **Insured**.

This exclusion does not apply with respect to liability of others assumed by the **Insured;**

\*    \*    \*

**2. UNDER COVERAGE A:**

A) to liability arising out of the handling or use of or the existence of any condition in any **aircraft product owned by**, loaned to, or, except with respect to **aircraft** covered under Coverage B, **grounding liability**, in possession or control of, or **in flight** by or on behalf of the **Insured;**

\*    \*    \*

64.     The Products/Completed Operations Policy contains Condition No. 3, titled "Notice of Occurrence, Loss, Claims Suit or Grounding", which imposes certain duties and obligations upon an insured as a pre-condition to coverage, including but not limited to the following:

## CONDITIONS

\*       \*       \*

## 3. NOTICE OF OCCURRENCE, LOSS, CLAIM, SUIT OR GROUNDING

A) The **Named Insured** must promptly notify the Company of an **occurrence** that may result in a claim. Such notice shall be in writing to the Company. Such notice shall include:

(1) particulars sufficient enough to identify the **Insured**,

(2) details regarding how, when and where the **occurrence** took place and

(3) the names and addresses of any injured persons and witnesses.

B) If claim is made or suit is brought against the **Insured**, the **Named Insured** must see to it that the Company receive prompt written notice of the claim or suit. The **Named Insured** and any other **Insured** involved must:

(1) immediately send the Company copies of any demands, notices, summonses or legal papers received in connection with the claim or suit,

(2) authorize the Company to obtain records and other information,

(3) cooperate with the Company in the investigation or defense of the claim or suit and

(4) assist the Company, upon the Company's request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of in-jury or damage to which the insurance may also apply.

C) No **Insured** will, except at its own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without the Company's written consent.

\*     \*     \*

## THE AVIATION CGL POLICY DOES NOT AFFORD COVERAGE TO NSC FOR THE THIRD-PARTY COMPLAINT

65.     Under Coverage A, Bodily Injury and Property Damage Liability, the Aviation CGL Policy covers "those sums that the Insured [NSC] becomes legally obligated to pay as damages because of Bodily Injury or Property Damage to which this insurance applies resulting from your [NSC's] aviation operations." The "Bodily Injury" must be caused by an "Occurrence".

66.     The Third-Party Complaint is based upon Mr. and Mrs. Lachenmeier's claims within the Underlying Action. By way of the Third-Party Complaint, Boeing seeks defense, indemnification and/or contribution from NSC for Mr. and Mrs. Lachenmeier's claims in the Underlying Action pursuant to the GP2 Services Agreement and common law indemnification and contribution.

67.     Several exclusions bar coverage of Boeing's Third-Party Complaint under Coverage A of the Aviation CGL Policy.

68.     Exclusion 2.b bars coverage for "**Bodily Injury** or **Property Damage** for which the Insured [NSC] is obligated to pay damages by reason of the assumption of liability in a contract."

69.     Exclusion 2.b contains two exceptions: for liability "that the Insured would have in the absence of the contract or agreement" and for liability "assumed in a contract or agreement that is an **insured contract**, provided the **Bodily Injury**

-31-

Complaint for Declaratory Relief

and **Property Damage** occurs subsequent to the execution of the contract or agreement."

70.     An "insured contract" is defined in the Aviation CGL Policy as, among other enumerated types of contracts, "that part of any other contract or agreement pertaining to your **aviation operations** … under which you assume the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization."

71.     An "insured contract" "does not include that part of any contract or agreement that" among other things indemnifies any person or organization for **Bodily Injury** or **Property Damage** arising out of the manufacture of **aircraft** or **aircraft** parts by the indemnitee."

72.     Per the definition of an "insured contract" in the Aviation CGL Policy, "tort liability" means "a liability that would be imposed by law in the absence of any contract or agreement".

73.     Neither Timothy Lachenmeier nor Kristen Lachenmeier is "a third person" who suffered "bodily injury" because both Timothy Lachenmeier and Kristen Lachenmeier are agents of NSC, and first-parties to the GP2 Services Agreement and to the Aviation CGL Policy; they are not "third persons".

74.     Consequently, the GP2 Services Agreement is not an "insured contract", the exception to Exclusion 2.b. for Liability Assumed in a Contract that is an "insured contract" does not apply and coverage is barred under Coverage A by operation of Exclusion 2.b.

75.     Further, the Aviation CGL Policy defines "aircraft" as "any **aircraft** including engines, propellers, operating and navigating instruments and radio equipment attached to or usually attached to or carried on the **aircraft**, including component parts detached and not replaced by other similar parts, and tools therein which are standard for the make and type of **aircraft**" and "excludes missiles, **spacecraft** and launch vehicles."

76.     In the Underlying Action, Mr. Lachenmeier was allegedly injured while conducting the PSQT balloon drop for Boeing for the purpose of testing Boeing's parachute system.

77.     Mr. and Mrs. Lachenmeier's alleged injuries arose out of the manufacture of Boeing's parachute recovery system, which parachute system is an "aircraft" as defined in the Aviation CGL Policy.

78.     As such, the exclusion in the definition of an "insured contract" is applicable, the GP2 Services Agreement is not an "insured contract", and any coverage existing under Coverage A is barred by Exclusion 2.b.

79.     Under Exclusion 2.e to Coverage A of the Aviation CGL Policy, coverage under Coverage A does not exist for, among other things, "bodily injury" to "an **employee** of the Insured [NSC] arising out of and in the course of: (a) employment by the Insured [NSC] or (b) performing duties related to the conduct of the Insured's [NSC's] business" and to "the spouse … of the employee as a consequence of" the above-mentioned bodily injury to an employee of the Insured.

80.     Exclusion 2.e provides that it applies "to any obligation to share damages with or repay someone else who must pay damages because of the injury".

81.     Timothy Lachenmeier, as President, Chief Technical Officer and Launch Director for NSC, and Kristen Lachenmeier, as Chief Financial Officer of NSC, were, at all relevant times, each an employee of NSC.

82.     According to the Underlying Complaint, Mr. Lachenmeier was injured while conducting the PSQT balloon drop for Boeing pursuant to the purchase contract between NSC and Boeing. Mr. Lachenmeier was acting in the course of his employment with NSC and in the performance of his duties related to the conduct of NSC's business which, upon information and belief, is providing high altitude and near space platforms and flight services using NSC's balloon platforms and systems.

/ / /

83.   Furthermore, Mrs. Lachenmeier was the spouse of Mr. Lachenmeier at the time of Mr. Lachenmeier's accident.

84.   Exclusion 2.e. (1) and (2) applies and bars coverage of Boeing's contractual and common law defense, indemnification and contribution claims in the Third-Party Complaint.

85.   Like Exclusion 2.b. for liability assumed in a contract, Exclusion 2.e for employee injury also "does not apply to liability assumed by the Insured [NSC] under an insured contract."

86.   The GP2 Services Agreement is not an "insured contract".

87.   The exception to Exclusion 2.e. does not apply and coverage is barred pursuant to the Exclusion.

88.   Exclusion 2.g to Coverage A within the Aviation CGL Policy bars coverage for "**Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any **aircraft**, **auto** or watercraft owned or operated by or leased, rented, or loaned to any Insured.

89.   At the time of the accident, NSC and/or Mr. Lachenmeier were conducting the PSQT balloon drop for Boeing. The work area in which the preparation for the PSQT balloon drop was carried out by NSC and Mr. Lachenmeier was allegedly controlled by Boeing and for NSC's use. For the purpose of conducting the PSQT balloon drop, NSC provided services to Boeing using NSC's balloon system to raise Boeing's capsule to a designated height.

90.   The balloon system was owned and/or operated by NSC and/or Mr. Lachenmeier.

91.   A balloon of the sort used in the PSQT balloon drop is an "aircraft" within the meaning of the Aviation CGL Policy.

92.   Mr. Lachenmeier's accident arose out of ownership or use of an aircraft owned or operated by NSC and/or by Mr. Lachenmeier.

93.   Exclusion 2.g applies to bar coverage under Coverage A.

94.     Under Endorsement No. 10, Amendatory Endorsement, notwithstanding Exclusion 2.g, coverage is extended to "those sums that the Insured becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** to which this insurance applies resulting from your [NSC's] ownership, maintenance or use of Experimental Aerostats and High Altitude Shuttle Systems (HASS)."

95.     An "aerostat" is generally a lighter-than-air craft, such as a dirigible or a balloon.

96.     Endorsement No. 10 contains exclusions barring coverage for:

    a. "**Bodily Injury** or **Property Damage** for which the Insured [NSC] is obligated to pay damages by reason of the assumption of liability in a contract or agreement" and

    b. bodily injury to an employee of NSC and bodily injury to a spouse of an employee of NSC related to the injuries to an employee. This exclusion applies "(i) [w]hether the Insured [NSC] may be liable as an employer or in any other capacity; and (ii) To any obligation to share damages with or repay someone else who must pay damages because of the injury".

97.     Coverage for the Third-Party Complaint is unavailable under Endorsement No. 10 due to application of the above-referenced exclusions.

98.     Pursuant to Condition 4 within the Aviation CGL Policy, "Duties In The Event Of Occurrence, Loss, Claim Or Suit", NSC "must see to it that [AGR US is] notified promptly of an **occurrence** … which may result in a claim."

99.     "Occurrence" within the Aviation CGL Policy means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, that results in **Bodily Injury** or **Property Damage** during the policy period neither expected nor intended from the standpoint of the Insured [NSC]."

100.   Mr. Lachenmeier's accident, which was an occurrence, loss, and/or claim, happened on March 27, 2017.

101.   At all relevant times, Mr. Lachenmeier was an officer of NSC.

102.   At all relevant times, Mrs. Lachenmeier was an officer of NSC.

103.   NSC did not notify AGR US of the accident until June 8, 2020, over three (3) years after the accident happened.

104.   AGR US was prejudiced by NSC's untimely notice of the accident.

105.   Coverage is unavailable to NSC with respect to the Third-Party Complaint on the ground that NSC failed to promptly notify AGR US of Mr. Lachenmeier's accident.

**THE PRODUCTS/COMPLETED OPERATIONS POLICY DOES NOT AFFORD COVERAGE TO NSC FOR THE THIRD-PARTY COMPLAINT**

106.   The insuring agreement of Coverage A – Bodily Injury Or Property Damage Liability provides that the Products/Completed Operations Policy will respond to "all sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **occurrence** arising out of the **products hazard** or the **completed operations hazard**." In order for coverage to exist under Coverage A, the loss must arise out of either the "products hazard" or the "completed operations hazard".

107.   The "products hazard" is defined as "the handling or use of (other than by an **Insured**) or the existence of any condition in an **aircraft product** when such **aircraft product**: A) is not in the possession of the **Insured** and B) is away from premises owned, rented or controlled by the **Insured**."

108.   At the time of the accident, NSC and/or Mr. Lachenmeier, who are both insureds under the Products/Completed Operations Policy, were using or handling NSC's balloon system and NSC's balloon system was in NSC and/or Mr. Lachenmeier's possession at the time of Mr. Lachenmeier's accident.

Complaint for Declaratory Relief

109.  NSC's balloon system, including its associated hardware, is an "aircraft product" as that term is defined within the Products/Completed Operations Policy.

110.  Boeing alleges that at the time of the accident, Mr. Lachenmeier as President and Launch Director, acting on behalf of NSC, had a supervisory role in the PSQT balloon drop and was closely involved in the execution of the PSQT balloon drop which involved use of the balloon system. The work area where the accident happened was "under Boeing's control for purposes of completing the PSQT" balloon drop and NSC's personnel, including Mr. Lachenmeier, were performing work there to complete the PSQT balloon drop.

111.  Mr. and Mrs. Lachenmeier allege in the Underlying Action that Boeing provided and maintained a work area and equipment "for NSC's use" during conduct of the PSQT balloon drop.

112.  Thus, NSC was using its balloon system and the balloon system was in NSC's possession at the time of the accident in connection with which Boeing seeks defense, indemnification and contribution in the Third-Party Complaint.

113.  Boeing's claims do not arise out of the "Products Hazard" and there is no coverage under Coverage A of the Products/Completed Operations Policy for Boeing's claims.

114.  The "Completed Operations Hazard" is defined as "**bodily injury** and **property damage** arising out of **completed operations** or reliance upon a representation or warranty at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the **Insured** [NSC]."

115.  Operations had not been completed or abandoned at the time that Mr. Lachenmeier's accident happened.

/ / /

116.  Mr. and Mrs. Lachenmeier allege in the Underlying Complaint that the PSQT balloon drop test which gave rise to Mr. Lachenmeier's accident was one of a series of tests and Mr. Lachenmeier was injured during one such test during a pre-launch activity.

117.  Mr. and Mrs. Lachenmeier allege that after Mr. Lachenmeier's accident, Boeing pressured them "to resume" PSQT balloon drop testing and told them that they "were holding up their test".

118.  Since operations had not been completed or abandoned at the time of Mr. Lachenmeier's accident, Boeing's defense, indemnification and contribution claims arising therefrom do not fall within the "Competed Operations Hazard" insuring agreement.

119.  None of the insuring agreements within the Products/Completed Operations Policy applies to the Third-Party Complaint and coverage does not exist.

120.  In addition, several Products/Completed Operations Policy exclusions apply to preclude coverage.

121.  Exclusion 2.A) provides in relevant part that the Products/Completed Operations Policy does not apply under Coverage A "to liability arising out of the handling or use of or the existence of any condition in any **aircraft product owned by**, loaned to, or … in possession or control of … the **Insured**".

122.  In the Underlying Action, Mr. and Mrs. Lachenmeier allege that Mr. Lachenmeier, NSC's President and Launch Director at the time, was handling or using NSC's balloon system during the PSQT balloon drop launch preparations.

123.  In its Third-Party Complaint, Boeing alleges that Mr. Lachenmeier was injured while conducting and supervising the PSQT balloon drop.

124.  NSC's balloon system was in Mr. Lachenmeier's and NSC's possession at the time of Mr. Lachenmeier's accident during the PSQT balloon drop.

Complaint for Declaratory Relief

125. The balloon system is an "aircraft product" as that term is defined within the Products/Completed Operations Policy.

126. Mr. Lachenmeier's accident, for which Boeing seeks defense, indemnification and contribution by way of the Third-Party Complaint, arose out of Mr. Lachenmeier's handling or use of an aircraft product, NSC's balloon system, owned by or in the possession of NSC.

127. Boeing alleges that the "precipitating cause" of Mr. Lachenmeier's accident was a "mechanical failure of a NSC aircraft product". Boeing alleges that the aircraft product belonged to NSC.

128. Exclusion 2.A) to Coverage A applies to preclude coverage of Boeing's claims within the Third-Party Complaint.

129. Exclusion 1.A) provides that the Products/Completed Operations Policy does not apply under Coverages A and B "to liability assumed by the **Insured** [NSC] under any contract or agreement except: 1) a warranty of fitness or quality of the **Named Insured's** [NSC] **aircraft products** or a warranty that work performed by or on behalf of the **Named Insured [**NSC] will be done in a workmanlike manner or 2) liability assumed by the **Named Insured** [NSC] under a written contract executed during the Policy Period provided such contract is: a) reported to the Company within thirty (30) days after its execution and the **Insured** [NSC] shall pay premium as determined by the Company [AGR US] and b) not rejected by the Company [AGR US]".

130. Boeing claims, among other things, that NSC assumed liability for Mr. and Mrs. Lachenmeier's alleged injuries per the GP2 Services Agreement between Boeing and NSC.

131. The GP2 Services Agreement was not reported to AGR US nor was any contract related to the PSQT balloon drop reported to AGR US.

132. Exclusion 1.A) applies to preclude coverage for the Third-Party Complaint to the extent of Boeing's defense, indemnification and contribution

Complaint for Declaratory Relief

claims which are based upon NSC's alleged assumption of liability within the GP2 Services Agreement because the GP2 Services Agreement was not reported to AGR US.

133.   Under Exclusion 1.C), the Products/Completed Operations Policy does not apply under Coverage A and B "to any obligation for which the **Insured** [NSC] or any carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law or under any similar law, or **bodily injury** to an employee of the **Insured** [NSC] arising out of and in the course of employment by the **Insured** [NSC]."

134.   Exclusion 1.C) contains an exception providing that it "does not apply with respect to liability of others assumed by the **Insured** [NSC]."

135.   At the time of his accident, Mr. Lachenmeier was an employee of NSC and his injuries were sustained during his work for NSC in connection with the PSQT balloon drop.

136.   Since the GP2 Services Agreement was not reported to AGR US, coverage for any liability assumed under the GP2 Services Agreement is also excluded pursuant to Exclusion 1.A).

137.   There is no coverage, either defense or indemnity, available under the Products/Completed Operations Policy for the Third-Party Complaint.

138.   Further, under Condition 3, "Notice Of Occurrence, Loss, Claim, Suit, Or Grounding", the Products/Completed Operations Policy requires that NSC "promptly notify the Company [AGR US] of an **occurrence** that may result in a clam."

139.   The Products/Completed Operations Policy defines "occurrence" as "an accident, including continuous or repeated injurious exposure to conditions … during the policy period, which results in **bodily injury** or **property damage** during the policy period neither expected nor intend-ed from the standpoint of the **Insured** [NSC]."

140.   Mr. Lachenmeier's accident, which was an occurrence, loss and/or claim, happened on March 27, 2017.

141.   At all relevant times, Mr. Lachenmeier was an officer of NSC.

142.   At all relevant times, Mrs. Lachenmeier was an officer of NSC.

143.   NSC did not notify AGR US of the accident until June 8, 2020, over three (3) years after the accident happened.

144.   AGR US was prejudiced by NSC's untimely notice of the accident.

**FIRST CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT**

**AVIATION COMMERCIAL GENERAL LIABILITY POLICY)**

145.   AGR US repeats and re-alleges Paragraphs 1 through 144 as if fully set forth herein.

146.   AGR US owes no coverage to NSC based upon the terms, conditions and provisions of the Aviation CGL Policy for the allegations within the Third-Party Complaint and AGR US is not obligated to defend NSC in the Third-Party Complaint or indemnify NSC for any judgment entered in such action against NSC.

147.   Coverage is unavailable for the Third-Party Complaint based upon application of the Aviation CGL Policy Exclusions to Coverage A:

a. Exclusion 2.b. for liability assumed in a contract and Exclusion 2.e for employee injury and injury to spouse of the employee both apply to bar coverage. The exception in both exclusions for liability assumed in an "insured contract" is inapplicable because (i) NCS' indemnification of Boeing for Mr. and Mrs. Lachenmeier's alleged injuries does not involve "bodily injury" "to a third person", and (ii) the definition of "insured contract" does not include any contract indemnifying a manufacturer of aircraft, as is Boeing, for injury arising out of manufacture of aircraft.

/ / /

b. Exclusion 2.g bars coverage under Coverage A for "bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft … owned or operated by or leased, rented, or loaned to any Insured" and Mr. and Mrs. Lachenmeier's damages for which Boeing seeks defense, indemnification and contribution in its Third-Party Complaint arose out of the ownership or use of an aircraft owned or operated by Mr. Lachenmeier and/or NSC.

c. No coverage is available under the Aviation CGL Amendatory Endorsement for Experimental Aerostats, because, if the Endorsement applies, coverage is barred by application of the Endorsement's exclusions of liability assumed in a contract and for bodily injury to employees of NSC and spouses of such employees.

148. By reason of the foregoing, based upon the terms, conditions, and exclusions of the Aviation CGL Policy, AGR US does not owe a duty to defend or a duty to indemnify NSC with respect to the Third-Party Complaint.

149. AGR US is entitled to a declaratory judgment that, under the terms, conditions, and exclusions of the Aviation CGL Policy, no coverage is available to NSC for the Third-Party Complaint and there is no duty under the Aviation CGL Policy to defend, pay defense costs or indemnify NSC from any claims, liability, causes of action or damages which are the subject of the Third-Party Complaint.

## SECOND CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

## (PRODUCTS/COMPLETED OPERATIONS POLICY)

150. AGR US repeats and re-alleges Paragraphs 1 through 149 as if fully set forth herein.

151. AGR US owes no coverage to NSC based upon the terms, conditions and provisions of the Products/Completed Operations Policy for the allegations

within the Third-Party Complaint and is not obligated to defend NSC in the Third-Party Complaint or indemnify NSC for any judgment entered in such action against NSC.

152.   Coverage is unavailable for the Third-Party Complaint because:

a.   Boeing's claims in the Third-Party Complaint do not arise out of the Products Hazard or out of the Completed Operations Hazard of the Products/Completed Operations Policy and fall outside of the insuring agreements therein and

b.   Exclusions 2.A) to Coverage A and Exclusions 1.A) and 1.C) to Coverages A and B apply to preclude coverage of the claims within the Third-Party Complaint.

153.   By reason of the foregoing, based upon the terms, conditions, and exclusions of the Products/Completed Operations Policy, AGR US does not owe a duty to defend or a duty to indemnify NSC with respect to the Third-Party Complaint.

154.   AGR US is entitled to a declaratory judgment that, under the terms, conditions, and exclusions of the Products/Completed Operations Policy, no coverage is available to NSC for the Third-Party Complaint and there is no duty under the Products/Completed Operations Policy to defend, pay defense costs or indemnify NSC from any claims, liability, causes of action or damages which are the subject of the Third-Party Complaint.

## THIRD CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT
## UNTIMELY NOTICE OF OCCURRENCE, LOSS OR CLAIM UNDER THE AVIATION COMMERCIAL GENERAL LIABILITY POLICY AND THE PRODUCTS/COMPLETED OPERATIONS POLICY)

155.   AGR US repeats and re-alleges Paragraphs 1 through 154 as if fully set forth herein.

156.   NSC failed to timely notify AGR US of the March 27, 2017 accident underlying the claims within the Third-Party Complaint in violation of Condition 4 of the Aviation CGL Policy and Condition 3 of the Products/Completed Operations Policy.

157.   AGR US was prejudiced by NSC's untimely notice of the accident.

158.   AGR US is entitled to a declaratory judgment that NSC's failure to provide timely notice to AGR US as required by Condition 4 of the Aviation CGL Policy and Condition 3 of the Products/Completed Operations Policy relieves AGR US of any duty to defend and indemnify NSC with respect to the Third-Party Complaint.

### **PRAYERS FOR RELIEF**

**WHEREFORE,** Plaintiff, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, prays for declaratory judgment in its favor and against Defendant, GSSL, INC. D/B/A/ NEAR SPACE CORPORATION, as follows:

A.     Declaring that Aviation Commercial General Liability Policy No. A2GA000581517AM does not provide coverage to GSSL, INC. D/B/A/ NEAR SPACE CORPORATION for the matters alleged in the Third-Party Complaint and that ALLIANZ GLOBAL RISKS US INSURANCE COMPANY is not obligated to defend GSSL, INC. D/B/A/ NEAR SPACE CORPORATION with respect to the Third-Party Complaint or indemnify GSSL, INC. D/B/A/ NEAR SPACE CORPORATION for any judgment entered against GSSL, INC. D/B/A/ NEAR SPACE CORPORATION with respect to the Third-Party Complaint;

B.     Declaring that Aircraft Products/Completed Operations and Grounding Liability Policy No. A2PR000582017AM does not provide coverage to GSSL, INC. D/B/A/ NEAR SPACE CORPORATION for the matters alleged in the Third-Party Complaint and that ALLIANZ GLOBAL RISKS US INSURANCE COMPANY is not obligated to defend GSSL, INC. D/B/A/ NEAR SPACE CORPORATION with respect to the Third-Party Complaint or indemnify GSSL,

INC. D/B/A/ NEAR SPACE CORPORATION for any judgment entered against GSSL, INC. D/B/A/ NEAR SPACE CORPORATION with respect to the Third-Party Complaint;

C.      Declaring that ALLIANZ GLOBAL RISKS US INSURANCE COMPANY may terminate the defense it is providing to GSSL, INC. D/B/A/ NEAR SPACE CORPORATION with respect to the Third-Party Complaint.

D.      Awarding to ALLIANZ GLOBAL RISKS US INSURANCE COMPANY reimbursement of defense costs and defense attorneys' fees paid in connection with the defense of GSSL, INC. D/B/A/ NEAR SPACE CORPORATION against the Third-Party Complaint.

E.      Awarding costs to ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; and

F.      Awarding such other and further relief to ALLIANZ GLOBAL RISKS US INSURANCE COMPANY as this Court deems just and proper.


DATED:  April 19, 2021          ANDERSON, McPHARLIN & CONNERS LLP


By:   /s/ Donald W. McCormick
      Donald W. McCormick
      Attorneys for Plaintiff ALLIANZ GLOBAL
      RISKS US INSURANCE COMPANY

Complaint for Declaratory Relief